# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

MATTHEW JOHN THOMPSON,

    Plaintiff,

vs.                                     Case No. 4:13cv501-RH/CAS

L. FLOWERS,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    Defendant filed a motion to dismiss, doc. 15, in this case on June 19, 2014. Plaintiff, an inmate proceeding pro se, had already submitted a reply to the motion, doc. 16, before an order could be entered advising Plaintiff of his obligation to respond to arguments presented therein. Thus, an Order was entered giving Plaintiff an opportunity to submit an amended response. Doc. 17. Plaintiff was specifically informed that "because Defendant contends Plaintiff did not exhaust administrative remedies as to some of his claims, the burden" was on Plaintiff to demonstrate "that he did exhaust all administrative remedies as were available to him, or explain why exhaustion was not available." *Id.* Plaintiff filed an amended response on October 21,

2014, doc. 21, and another amended response, doc. 22, a week later on October 27, 2014.  Only the last filed response, doc. 22, has been reviewed as an amended document replaces the earlier filed document.

**Allegations of the complaint, doc. 1**

Plaintiff alleges that on December 7, 2012, and again on January 17, 2013, Defendant Flowers violated Plaintiff's First Amendment rights by opening his confidential legal mail.  Doc. 1 at 6.  Plaintiff claims he was not present when his mail was opened.  Plaintiff alleged that he "handed over a confidential letter" to Defendant Flowers on November 28, 2012, for mailing and on December 7, 2012, it was returned to Plaintiff as undeliverable as addressed, but Plaintiff contends it "had very obviously been opened."  *Id.*  Plaintiff contends that when he went to sign for legal mail on January 17, 2013, the "legal mail" had been "pre-opened."  *Id.* at 7.  Plaintiff claims that Defendant Flowers made "loud verbal threats" on February 11, 2013,[1] promising to retaliate against Plaintiff if he made additional allegations against her in his grievances.  *Id.*  Plaintiff also claims that on August 6, 2013, Defendant Flowers gave him a "false date stamp date" and suggests that Defendant is trying to obstruct his efforts to meet a filing deadline or sabotage his grievances.  *Id.*

---

[1] Plaintiff also alleged that he learned on February 22, 2013, that "legal mail" he had sent to state court on January 7, 2013, had not arrived until February 7, 2013.  *Id.* at 7. Plaintiff does not provide any facts which provide a causal connection between that delay and Defendant Flowers.  Thus, that assertion is not accepted as a separate and distinct claim against Defendant Flowers.  Even if it was, there is no indication of any harm to Plaintiff caused by the delay and, thus, it would be insufficient to state a claim.

Case No.: 4:13cv501-RH/CAS

**Arguments raised in the motion to dismiss, doc. 15**

Defendant Flowers contends Plaintiff did not exhaust administrative remedies as to his claim of retaliation and verbal threats. Doc. 15. Flowers also argues Plaintiff has not stated a viable claim as to the mail issues, that she is entitled to Eleventh Amendment immunity, and Plaintiff is not entitled to monetary damages. *Id.*

**Standard of Review**

Analysis of a motion to dismiss is generally limited to the face of the complaint and any attachments. Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) (citing 5 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1356 at 590-92 (1969) (Wright & Miller)). "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." Brooks, 116 F.3d at 1369 (quoting Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)). Thus, it may be permissible to "consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of America Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005), and Maxcess, Inc. v. Lucent Tech., Inc., 433 F.3d 1337, 1340 (11th Cir. 2005) (stating "a document outside the four corners of the complaint may still be

considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.")).

Defendant Flowers attached several exhibits to the motion to dismiss, doc. 15. Exhibits B-F, H-M are copies of grievances. Exhibits A and G are two declarations which pertain to grievances. Exhibit A has not been relied upon because it is not in the proper format.[2] Otherwise, the exhibits have been reviewed and, because there is not a challenge to the authenticity of the exhibits and because they are central to Plaintiff's claims, they have been considered. Similarly, Plaintiff submitted copies of grievances with his response, doc. 22, which have been considered. Those affidavits submitted with Plaintiffs exhibits (doc. 22 at 20, 22, and 28) which address the merits of claims and not just whether Plaintiff exhausted those claims have not been considered because they are extrinsic. One affidavit submitted by both Plaintiff (doc. 22 at 20) and Defendant has been considered. (Doc. 15, Ex. J at 2).

**A.  Exhaustion**

When the Prison Litigation Reform Act [hereinafter PLRA] was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of

---

[2] The declaration is submitted on behalf of Monica Hattaway. Ex. A (doc. 15-1). However, the declaration under penalty of perjury which is at the top of the page is made by "Dena L. Ward." Though an obvious typographical mistake, the document has not been considered.

§ 1997e(a) is mandatory, Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998), although it is not jurisdictional. Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)). There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted. Jones v. Bock, 549 U.S. 199, 223, 127 S.Ct. 910, 925, 166 L.Ed.2d 798 (2007) (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action."); Brown v. Sikes, 212 F.3d 1205, 1206, n.1 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons).

    Moreover, a prisoner must also comply with the process set forth and established by the grievance procedures. Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006).

Defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (relying on Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.")); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party). Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. Id., at 1374-75. Plaintiff has been provided notice of the opportunity to develop a record to show he exhausted available remedies. Doc. 17.

There are several separate and discreet First Amendment claims which Plaintiff must have exhausted to proceed in this case. Each of them are addressed below.

### 1. Opening Mail

Flowers has acknowledged that Plaintiff exhausted his claim concerning Flowers having opened his mail outside of his presence in December 2012. Doc. 15 at 4.

Flowers approved Plaintiff's informal grievance on December 11, 2012, indicating Plaintiff's mail was accidentally opened, although it was not read or tampered with, and once Defendant realized it was legal or privileged mail, Plaintiff was put on the callout to sign for the mail. Doc. 15, Ex. B. Because that grievance was approved, Plaintiff was not required to proceed further through the grievance process. Similarly, Plaintiff submitted another informal grievance on January 17, 2013, complaining that mail was again opened outside his presence. Doc. 15, Ex. C. That informal grievance was also approved, advising that staff would "be more careful" with Plaintiff's mail. *Id.* The claims concerning the opening of Plaintiff's mail are exhausted and may proceed.

### 2. Retaliation and threats

Plaintiff's claim that Flowers threatened him with retaliation if he filed more grievances complaining about her is a separate and discreet claim which Plaintiff must have exhausted to proceed. Flowers contends that Plaintiff did not exhaust administrative remedies concerning this claim. Doc. 15 at 5-6. The basis for that contention is that Plaintiff's only grievance concerning that allegation was a direct grievance of reprisal that was not accepted as a grievance of reprisal and was returned to Plaintiff and instructed to resubmit the grievance. *Id.*; *see* Ex. J (doc. 15-10).

Plaintiff submitted a "Grievance of Reprisal" against Defendant Flowers on February 13, 2013. Ex. J. Plaintiff said that at his scheduled legal mail callout two days earlier, he was "interogated [sic], threatened, and verbally intimidated, and abused." Plaintiff asserted that no inmate should be "abused, intimidated, theratened [sic], etc. for using the inmate grievance process . . . ." *Id.* Plaintiff requested that Ms. Flowers be

contacted and the Department policy on that issue be made clear to her. *Id.* Plaintiff concluded by stating: "As this inmate must go thru Ms. Flowers in order to send out legal mail, this issue must be resolved, ASAP." *Id.*

Plaintiff submitted one affidavit of an inmate witness with his Grievance of Reprisal. Ex. J (doc. 15-10 at 2). Inmate Heriberto Delgado, DC# B10766, stated that he was in line to receive legal mail and heard "a very angry Ms. Flowers" yell and scream at Plaintiff that she admitted to opening his mail the first time, but that new people were in the mail room and this time, she "didn't do it." *Id.* She said, "If you write one more grievance on me, I'll go to the Warden" and she threatened to send Plaintiff where he would not want to go. *Id.* When Plaintiff asked to be put on the callout for legal mail the following day, Flowers "yelled, 'I'm not doin' you any favors! No I won't put you on tomorrow! Request denied!" *Id.*; *see also* doc. 22 at 19.

Plaintiffs "grievance [was] not accepted as a grievance of reprisal." Ex. J (doc. 15-1 at 4). Since Plaintiff did not submit a copy of the formal grievance filed at the institution level, or provide an acceptable reason for bypassing the grievance procedure, Plaintiff was permitted 15 additional days to resubmit his grievance at his institution. *Id.* The grievance was "returned without action." *Id.*

In response, Plaintiff argues that the Department apparently does not consider the issue to be "urgent or actionable." Doc. 22 at 4. Plaintiff claims that he sent the direct grievance of reprisal because he was "threatened about writing any more grievances . . . ." *Id.* Plaintiff contends that Central Office was given "clear and specific notice with affidavit of witness attached" concerning Plaintiff's dilemma and refused to

Case No.: 4:13cv501-RH/CAS

assist him, attempting to make the issue "just go-away." *Id.* Plaintiff claims the grievance process is null and void if the Department can reject his grievance and then claim Plaintiff did not exhaust administrative remedies. *Id.* at 4.

The Rule which was in effect[3] in February 2013 when Plaintiff submitted his "Grievance of Reprisal" states that inmates may submit "[e]mergency grievances and grievances of reprisals, protective management, admissible reading material, grievances concerning sentence structure . . . or inmate banking issues . . . directly with the Office of the Secretary . . . ." FLA. ADMIN. CODE R. 33-103.007(6)(a). The Rule requires the inmate to "clearly state the reason for not initially bringing the complaint to the attention of institutional staff and bypassing the informal and formal grievance steps of the institution or facility . . . ." FLA. ADMIN. CODE R. 33-103.007(6)(a)2. Pursuant to Rule 33-103.002(9), a "Grievance of Reprisal" is "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." FLA. ADMIN. CODE R. 33-103.002(9).

Review of Plaintiff's Grievance of Reprisal reveals that Plaintiff alleged that Flowers had threatened him, and he suggested that the issue which caused her to be "in a state" was "under review in the inmate grievance process." Ex. J. Plaintiff did not clearly assert that he had been threatened in retaliation for filing grievances, but he did point out in his grievance that inmates should not be abused, intimidated, or threatened

---

[3] The Rules cited became effective on November 7, 2012.

Case No.: 4:13cv501-RH/CAS

for using the grievance process. *Id.* For present purposes, it is accepted that Plaintiff did attempt to assert a grievance which met the definition of a "Grievance of Reprisal."

However, Plaintiff did not comply with the Rule's requirement to "clearly state the reason" he did not first bring the complaint "to the attention of institutional staff" which would permit him to bypass the usual and necessary steps of the grievance process. Plaintiff provided no statements indicating he was in fear for his safety, he did not allege that officials at his institution would not assist him, nor does he remotely suggest that he was afraid for Flowers to know about his grievance. Indeed, Plaintiff's specific request for relief was to have someone "take the time to contact Ms. Flowers on this issue, and make clear the FDOC policy." Ex. J. That does not suggest that Plaintiff was in fear for Flowers to know Plaintiff had filed another grievance. Because Plaintiff provided no statement which explained why he felt he needed to bypass the usual, required grievance steps, this grievance of reprisal should not be accepted as completing the exhaustion requirement. *See* Dimanche v. Brown, No. 4:11cv533-SPM/CAS, 2012 WL 2053699, at *5 (N.D. Fla. May 21, 2012), report and recommendation adopted, No. 4:11-CV-533-SPM/CAS, 2012 WL 2053696 (N.D. Fla. June 7, 2012) (concluding that because prisoner "did not present any reasons for not initially bringing the complaint to the attention of institutional staff" and did not "specifically identify the grievance as one of either a reprisal, or an emergency, or of a sensitive nature," prisoner did not exhaust administrative remedies); Baker v. Liadacker, No. 3:08CV295-RV/WCS, 2009 WL 3297497, at *5-6 (N.D. Fla. Oct. 13, 2009) (finding prisoner did not properly exhaust, noting that plaintiff "could, and should, have clearly stated 'the reason for not initially

bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility' "). To be sure, there may be times when the Department's rejection of an attempted "grievance of reprisal" should not be accepted when ruling on an exhaustion defense. See Moton v. Cowart, No. 8:06-CV-2163-T-30EAJ, 2008 WL 2117120, at *6 (M.D. Fla. May 19, 2008) (concluding that inmate "fully and properly exhausted his available administrative remedies" notwithstanding the rejection of his grievance of reprisal by the Secretary's office, noting the rejection was incorrect and did not comply with the rules). This, however, is not one of those times. Plaintiff's First Amendment claims for retaliation and verbal threats should be dismissed for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**B.  Immunity**

Defendant Flowers has raised Eleventh Amount immunity as a defense to Plaintiff's complaint. Doc. 15 at 7. Plaintiff did not address that argument. Doc. 22.

Absent limited exceptions, the State of Florida and its agencies are immune from suit in this Court by force of the Eleventh Amendment. Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990); see also Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985) (reiterating that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). In enacting § 1983, Congress did not abrogate a state's immunity, Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974), nor

did Florida waive its Eleventh Amendment sovereign immunity and consented to suit in federal court under § 1983.  Gamble v. Florida Dep't of Health and Rehab. Servs., 779 F.2d 1509, 1520 (11th Cir. 1986).  To the degree Plaintiff seeks monetary damages against this Defendant in her official capacity, that relief is barred.  Any surviving claim for damages must proceed against Flowers in her individual capacity only.

**C.     Failure to state a claim**

Flowers contends that Plaintiff's claim concerning the surviving claim for opening his mail outside his presence must be dismissed because Plaintiff has not shown actual injury.  Doc. 15 at 15-16.  It is well established under the First Amendment that an inmate's legal mail "may be opened only in the inmate's presence and only to inspect for contraband."  Al-Amin v. Smith, 511 F.3d 1317, 1325-26 (11th Cir. 2008) (citing Taylor v. Sterrett, 532 F.2d 462 (5th Cir.1976), and Guajardo v. Estelle, 580 F.2d 748 (5th Cir. 1978).  Yet, "the Supreme Court clarified that 'actual injury' is a constitutional prerequisite to an inmate's access-to-courts claim."  Al-Amin, 511 F.3d at 1332 (citing Lewis v. Casey, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996); Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006) (citing Casey and stating, "in order to assert a claim arising from the denial of meaningful access to the courts, an inmate must first establish an actual injury"), *cert. denied*, 127 S.Ct. 2996 (2007) (other citations omitted)).

Here, Plaintiff has not alleged any actual injury.  There is no indication that Plaintiff had a habeas petition or civil rights case denied or dismissed because Defendant Flowers opened his mail on several occasions outside his presence.

Because there is no injury to Plaintiff's rights of access to the courts, his claim is insufficient on its face.

Construed liberally, Plaintiff's complaint also presents a violation of Plaintiff's right to free speech, a separate and distinct claim from the access to courts claim, which is a right also protected by the First Amendment. Al-Amin, 511 F.3d at 1333-34. The Al-Amin court agreed with the Third Circuit Court of Appeals' decision in Jones v. Brown, 461 F.3d 353 (3d Cir. 2006), *cert. denied*, 127 U.S. 1822 (2007), that there was no requirement in this type of claim for an inmate to "show any actual injury beyond the free speech violation itself to state a constitutional claim." *Id.* The issue to be determined "is whether a "pattern and practice of opening (but not reading) [Plaintiff's] clearly marked attorney mail outside his presence sufficiently chills, inhibits, or interferes with [Plaintiff's] ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech." Al-Amin, 511 F.3d at 1334; *see also* Jones, 461 F.3d at 358-59 (stressing "that a pattern and practice of opening properly marked court mail is particularly troubling because it 'chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court.' " ) (citation omitted).

Flowers argues that there was no "pattern and practice of" opening mail outside Plaintiff's presence, asserting that Plaintiff only recounted one specific incident. Doc. 15 at 16. The Court finds, however, that Plaintiff alleged two incidents (December 7, 2012, and January 17, 2013) in which his mail was improperly opened. It is true that two isolated incidents may not be sufficient to demonstrate an unconstitutional "practice."

See Davis v. Goord, 320 F.3d 346, 351-52 (2d Cir. 2003) (citing Cancel v. Goord, No. 00-Civ-2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001)).  However, beyond mere mathematical calculation, an inmate states a claim under the First Amendment when he alleges that legal mail is opened outside his presence, especially when threats of retaliation have also been made.  That "practice 'sufficiently chills, inhibits, or interferes with [a plaintiff's] ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech.' " Ford v. Hunter, 534 F. App'x 821, 824 (11th Cir. 2013) (quoting at Al-Amin, 511 F.3d at 1334).  In Ford, the Eleventh Circuit reversed the dismissal of a similar free speech claim based on only two incidents.  "In this case, Plaintiff had only two letters opened after he complained to prison officials. These two incidents, coupled with Defendant Coleman's threats to withhold Defendant's mail entirely, are enough to state a First Amendment Free Speech claim."  534 F. App'x at 824.  At this stage of litigation, the motion to dismiss this claim should be denied. Plaintiff case should be permitted to proceed, providing Plaintiff with an opportunity to demonstrate that Flowers' actions chilled or inhibited his ability to speak, protect, or complain in violation of the First Amendment.

**D.    Damages**

Flowers properly points out that Plaintiff's request for monetary damages was only for punitive damages of $100,000.00.  Doc. 15 (citing doc. 1 at 8).  Plaintiff does not allege any physical injury as a result of the surviving First Amendment claim.  Thus, even if successful on that claim, Plaintiff's request for monetary damages must be limited to nominal damages as required by 42 U.S.C. § 1997e(e).  Harris v. Garner, 216

F.3d 970 (11th Cir. 2000)[4], *reinstating in part* 190 F.3d 1279 (11th Cir. 1999); <u>Osterback v. Ingram, et al.</u>, No. 00-10558, 263 F.3d 169 (11th Cir. 2001) (Table).  The PLRA also precludes an award "of punitive damages in the absence of physical injury."  <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1199 (11th Cir. 2011).

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss, doc. 15, Plaintiff's complaint, doc. 1, be **GRANTED in part.**  Plaintiff's First Amendment retaliation claim should be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e), the First Amendment access to the court claim should be **dismissed** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and Plaintiff's request for damages must be limited to nominal damages only, against Defendant in her individual capacity only.  It is also **RECOMMENDED** that this case be **REMANDED** for further proceedings on the surviving First Amendment free speech claim.

**IN CHAMBERS** at Tallahassee, Florida, on February 4, 2015.

 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

---

[4] <u>Harris v. Garner</u>, 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d 1059, and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir. 2000), *cert. denied* 121 S. Ct. 2214 (2001).  The parts of the panel opinion relevant to this legal issue were reinstated.

Case No.: 4:13cv501-RH/CAS

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**