IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**MATTHEW JOHN THOMPSON,**

 **Plaintiff,**

**vs.**              **Case No. 4:13cv501-RH/CAS**

**L. FLOWERS,**

 **Defendant.**

_____/

## **SECOND REPORT AND RECOMMENDATION**[1]

Defendant Flowers filed a motion to dismiss, ECF No. 15, which was granted in part. ECF Nos. 23, 28. Plaintiff's First Amendment claims for retaliation and opening his mail were not dismissed, but his requests for actual and punitive damages were dismissed. ECF No. 28. Thereafter, Defendant filed an answer, ECF No. 30, and an Initial Scheduling Order was entered establishing a period for conducting discovery. ECF No. 29.[2]

---

[1] The first Report and Recommendation, ECF No. 23, concerned Defendant's motion to dismiss, ECF No. 15. That motion was granted in part. ECF Nos. 23, 28.

[2] Discovery began on March 18, 2015, and was originally scheduled to conclude on June 26, 2015. ECF No. 29. It was extended, however, through July 24, 2015, notwithstanding Plaintiff's objections. ECF Nos. 46-57.

After the conclusion of the discovery period, both parties filed summary judgment motions. ECF Nos. 58, 60. The parties were provided an opportunity to respond to the opposing party's motion, ECF No. 64, and responses have been filed. ECF Nos. 67, 70.

**Allegations of the complaint, doc. 1**

Plaintiff Matthew John Thompson alleged that Defendant Loretta Flowers violated his First Amendment rights by opening his confidential legal mail outside his presence on two occasions: December 7, 2012, and January 17, 2013. ECF No. 1 at 6. Mr. Thompson claims that after he filed grievances concerning those actions, Ms. Flowers made "loud verbal threats" on February 11, 2013,[3] promising to retaliate against him if he made additional allegations against her in his grievances. *Id.*

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

[3] Plaintiff also alleged that he learned on February 22, 2013, that "legal mail" he had sent to state court on January 7, 2013, had not arrived until February 7, 2013. *Id.* at 7. Plaintiff does not provide any facts which provide a causal connection between that delay and Defendant Flowers. Thus, that assertion is not accepted as a separate and distinct claim against Defendant Flowers. Even if it was, there is no indication of any harm to Plaintiff caused by the delay and, thus, it would be insufficient to state a claim.

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[4] the court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554.

---

[4] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Case No. 4:13cv501-RH/CAS

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (cited in Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587

(internal quotation marks omitted) (quoted in <u>Ricci v. DeStefano</u>, 129 S.Ct. at 2677).

"Cross motions for summary judgment do not change the standard." <u>Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church</u>, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in <u>Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.</u>, 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" <u>Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n</u>, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting <u>Buell Cabinet Co. v. Sudduth</u>, 608 F.2d 431, 433 (10th Cir. 1979)) (quoted in <u>Ernie Haire Ford, Inc.</u>, 541 F. Supp. 2d at 1297-98). Because Mr. Thompson (as the party with the burden of proof) has a heavier burden on summary judgment, the Court will consider Ms. Flowers' motion first. If that motion is denied, the Court will consider whether Mr. Thompson is entitled to judgment as a matter of law.

Case No. 4:13cv501-RH/CAS

**Undisputed Rule 56 Evidence**[5]

Ms. Flowers is the Warehouse and Mailroom Supervisor at Liberty Correctional Institution. Ex. A at 1 (ECF No. 58-1 at 1). She is an "administrative employee" of the Department and is not a correctional officer. Ex. A at 1. She acts as custodian of Liberty C.I.'s mailroom records, is a supervisor of other mailroom staff, and is responsible for ordering and receiving supplies for the institution and keeping vehicle maintenance records. *Id.*

Mr. Thompson alleged in his complaint that he received opened mail on December 7, 2012, and January 17, 2013. Ms. Flowers submitted redacted copies of the mail logs for those two dates. Ex. A, attachments.[6] The mail log reveals that Mr. Thompson signed for mail on December 7, 2012, which was noted on the log as "returned mail from the post office." Ex. A at 7 (ECF No. 71-1). The mail was received at the institution on December 4, 2012. *Id.*

---

[5] Mr. Thompson submitted a summary judgment motion which does not argue the merits of his case. ECF No. 60. Rather, Mr. Thompson complains about discovery issues. Mr. Thompson did not submit any relevant evidence concerning the merits of his case with that motion. *Id.* Moreover, Mr. Thompson presented no evidence with his response to Ms. Flowers' summary judgment motion. ECF No. 70.

[6] The attachments were not legible as originally filed, ECF No. 58-1, and were resubmitted as ECF No. 71-1.

Case No. 4:13cv501-RH/CAS

An informal grievance submitted by Mr. Thompson in which he complained about that mail being opened reveals the mail was sent to Florida Inmate Legal Services, Inc.  Ex. A at 11.  His grievance also said that he was handed that mail by Ms. Flowers who said she accidentally opened his "legal mail envelope, sorry."  *Id.*  Ms. Flowers responded to that grievance advising that the mail "was accidently opened" but "was not read or tampered with."  *Id.*  She said, "Once I saw it was 'legal or privileged' mail I put you on callout to sign for" the mail.  *Id.*

Additionally, Mr. Thompson signed for one piece of mail on January 17, 2013, which was noted as received from this Court on January 15, 2013.  *Id.* at 8.  Mr. Thompson signed for a second piece of mail on January 17, 2013, also from this Court, which was received at the institution on January 16, 2013.  *Id.* at 10.  Mr. Thompson submitted another informal grievance to Ms. Flowers questioning how his mail could have accidentally been opened two more times.  Ex. A at 12.  Ms. Flowers responded that "warehouse/mailroom staff [would] be more careful with your legal mail."  *Id.*

Ms. Flowers explains in her declaration that all mail received from the United States Postal Service is unsorted. Ex. A at 2. Mailroom staff then "sort all mail into mail totes that are separated into several categories. *Id.*

> During the sorting process, no mail is opened or inspected. To properly sort the mail, Mailroom staff review the outside of the envelope for who it is addressed to and where it is coming from. Generally, there are three to four Mailroom staff who sort all mail into the following categories: Routine Mail (large and small envelopes); Legal and Privileged Mail, Books and Publications, Administration/Department Mail, and Third Class Mail. Third Class Mail is composed of magazines, magazine subscriptions, mail flyers, and religious mail. Due to the voluminous amount of Routine Mail, this mail is placed into a conveyor belt machine that mechanically opens the mail.

Ex. A at 2.

Ms. Flowers explains that "[d]uring the initial sorting process, Mailroom staff do not inspect the condition or the contents of the mail." *Id.* "Mailroom staff only observe who the mail is addressed to, observe who it is from, and attempt to carefully sort the mail accordingly, but occasionally mail is mis-sorted by mistake." *Id.*

If legal mail is accidentally mis-sorted with the routine mail, "it will be opened mechanically by mistake and the mistake will not be realized until the mail is sorted and gathered for delivery." *Id.* at 3. When the mistake is discovered, "the mail is then placed into the Legal and Privileged mail tote

for processing as legal/privileged mail." *Id.* "Because the legal/privileged mail is not inspected prior to the initial sorting process, there is no way of knowing if the mistakenly opened privileged/legal mail was delivered to Liberty Correctional Institution opened, or if it was accidentally mis-sorted and mechanically opened." *Id.*

Ms. Flowers declares that there is no record of the person who sorted Mr. Thompson's legal mail that was then "mistakenly opened." *Id.* Ms. Flowers acknowledges responding to Mr. Thompson's informal grievance and noting that it had been accidentally opened, but she does "not recall stating" that *she* opened his mail as opposed to the mail simply having been opened by staff. Ex. A at 3. Ms. Flowers notes that on both dates, she apologized to Mr. Thompson that his mail had been opened and advised that staff would be more careful. *Id.*

Ms. Flowers states in her declaration that she did not threaten Mr. Thompson on February 11, 2013, "or any other day," and "did not retaliate against him, and did not direct any FDOC staff to harass or watch him." Ex. A at 3. Ms. Flowers has "no ability to direct any other FDOC" administrative or security staff to treat Mr. Thompson differently than any other person. *Id.* She advises that her responsibilities are "limited to the

Case No. 4:13cv501-RH/CAS

Case 4:13-cv-00501-RH-CAS   Document 72   Filed 02/18/16   Page 10 of 15

Page 10 of 15

Warehouse and the Mailroom" and she has no control over law library staff, the assignment of staff, or the housing assignment of inmates. *Id.*

During his deposition, Mr. Thompson explained that the mail which was returned as "not deliverable" was addressed to Florida Inmate Legal Services (hereinafter "FILS"). Ex. E at 6-7 (ECF No. 61-1). That mail was sent from Mr. Thompson to FILS, but he testified that they never responded and he "never had any correspondence with them except" his mail to FILS. *Id.* at 7. He said that he was requesting assistance but "they never responded." *Id.* Mr. Thompson clarified that FILS was not his lawyer. *Id.* Mr. Thompson also testified that one piece of mail from the Court which was opened outside his presence was a § 1983 complaint form and, presumably, an Order to submit an amended complaint. *Id.* at 10, 12. It was unknown what was in the second piece of mail from this Court. *Id.* at 12-13.

**Analysis**

**a.    Retaliation**

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (quoted in O'Bryant v. Finch, 637 F.3d 1207,

Case 4:13-cv-00501-RH-CAS   Document 72   Filed 02/18/16   Page 11 of 15

Page 11 of 15

1212 (11th Cir. 2011)); *see also* Malloy v. Peters, 617 F. App'x 948, 950 (11th Cir. 2015); Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). To prevail on such a claim, an "inmate must establish that: '(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance].'" Mosley, 532 F.3d at 1276 (quoted in O'Bryant, 637 F.3d at 1212).

Here, there is no evidence that Mr. Thompon suffered any retaliatory action after filing grievances.  There is also no evidence showing that any problems he encountered were due to Ms. Flowers and, thus, there is no causal relationship to Ms. Flowers.  Summary judgment should be granted in favor of Ms. Flowers on the retaliation claim.

**b.   Opening Mail**

"[M]ail is a medium of free speech, 'and the right to send and receive mail exists under the First Amendment.'" Ford v. Hunter, 534 F. App'x 821, 824 (11th Cir. 2013) (quoting Al–Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008)).  Although incarceration necessarily curtails some constitutional

Case No. 4:13cv501-RH/CAS

rights, inmates retain the First Amendment right to send and receive mail "separate and apart from [their] constitutional right of access to the courts." Al–Amin, 511 F.3d at 1333; Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

Because Mr. Thompson did not submit any evidence in support of his summary judgment motion or in opposition to Ms. Flowers' summary judgment motion, the Rule 56 evidence is undisputed. Ms. Flowers acknowledged that three pieces of Mr. Thompson's mail was opened outside of his presence on two days. However, her declaration provides evidence that legal mail is sometimes accidentally mis-sorted and "opened mechanically by mistake." Ex. A at 3. It is unknown whether the mail at issue here was mistakenly opened and delivered to Liberty C.I. in that condition, "or if it was accidentally mis-sorted and mechanically opened." *Id.* Thus, there is no evidence of who sorted Mr. Thompson's mail, nor who may have opened it. It is undisputed that Mr. Thompson's mail was inadvertently opened, but it is unknown who was responsible for doing so.

Even if it may be assumed that Ms. Flowers did so, there is no evidence that the mail was intentionally opened pursuant to a pattern or practice. Isolated instances of opening mail is insufficient when there is no

evidence of a "pattern or practice." Al–Amin, 511 F.3d at 1334 (relying on the Third Circuit's decision in Jones v. Brown, 461 F.3d 353 (3d Cir. 2011), to conclude that a "pattern and practice" of "repeatedly opening" a prisoner's attorney mail outside his presence infringed his right to freedom of speech)); see also Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (noting that an isolated incident of opening legal mail outside the inmate's presence is "insufficient to establish a constitutional violation" and finding it must be shown "that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'") (citations omitted); Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *10 (M.D. Fla. Sept. 19, 2013) aff'd sub nom. Lewis v. Charlotte Corr. Inst. Employees, 589 F. App'x 950 (11th Cir. 2014) (holding that because the prisoner did not allege "that either defendant 'regularly and unjustifiably' opened his legal mail outside of his presence or otherwise interfered with his legal mail, he has not stated a constitutional claim for a violation of his First Amendment right to send or receive legal mail."). Two or three isolated instances of mistakenly opening a prisoner's mail cannot support a First Amendment claim. O'Connor v. Carnahan, No. 3:09CV224-WS/EMT, 2014 WL 293457, at *6 (N.D. Fla. Jan. 27, 2014) (citing Huey v. Philbin, Case No. 7:12–cv–97 (HL), 2013 WL

3816684, at *6 (M.D. Ga. July 22, 2013) (stating that "Plaintiff's allegation that on one occasion he did not receive his American's Sovereign Bulletin does not rise to the level of a constitutional violation, and therefore Plaintiff has failed to state a First Amendment claim"); Pro v. Bandy, Case No. 2:08-cv-0175-RWS, 2008 WL 4445080, at *3 (N.D. Ga. Sept.25, 2008) (stating that "allegations of sporadic interference with incoming mail are insufficient to state a First Amendment claim" and finding plaintiff's failure to receive a newspaper on four occasions did not state a First Amendment claim); McKinnon v. James, No. Civ. A. 3:03CV2274/SRU, 2005 WL 1074466, at *3 (D.Conn. May 5, 2005) ("To state a claim for the violation of [the First Amendment right to free flow of mail] ... an inmate must allege more than a single instance of interference with his mail.").  Accordingly, the summary judgment motion filed by Ms. Flowers, ECF No. 58, should be granted as to this First Amendment claim as well.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the summary judgment motion filed by Defendant Flowers, ECF No. 58, be **GRANTED,** and Plaintiff Thompson's motion for summary judgment, ECF No. 60, be **DENIED**.

Case No. 4:13cv501-RH/CAS

**IN CHAMBERS** at Tallahassee, Florida, on February 18, 2016.

   S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.